# THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION
### No. 5:25-cv-367

|  |  |  |
|---|---|---|
| WAKE EMERGENCY PHYSICIANS, P.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | **(JURY TRIAL DEMANDED)** |
| UNITEDHEALTHCARE INSURANCE COMPANY and UNITEDHEALTHCARE OF NORTH CAROLINA, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

Wake Emergency Physicians, P.A. ("WEPPA"), by and through its undersigned counsel, brings claims against UnitedHealthcare Insurance Company and UnitedHealthcare of North Carolina, Inc. (together, "UHC") for violations of the Employee Retirement Income Security Act of 1974 ("ERISA") (Count I), equitable relief pursuant to 29 U.S.C. § 1132(a)(3) (Count II), violations of North Carolina's Unfair and Deceptive Trade Practices Act (the "UDTPA") (Count III), and unjust enrichment (Count IV) arising out of and relating to UHC's improper denials of covered services and its failure and refusal to pay WEPPA's claims for emergency medical treatment of UHC's customers. In further support thereof, WEPPA asserts as follows:

## I.     INTRODUCTION

1.     WEPPA is a group practice of emergency medicine providers who provide medical services in emergency departments in various hospitals in east North Carolina. As such, WEPPA's providers were on the front lines of the pandemic and bore the enormous strain placed on health care providers in the United States.

2.     WEPPA's providers are obligated by virtue of federal law to evaluate, treat, and

1

stabilize the medical conditions of every patient who presents at the emergency departments they staff regardless of the patients' ability to pay. This includes UHC customers, thousands of whom have sought emergency medical services from WEPPA's providers.

3. Since 2019, UHC has engaged in a scheme to systematically deny all payment on a significant number of WEPPA's bills for emergency services provided to the highest acuity patients presenting to the emergency department, costing WEPPA millions of dollars in unpaid claims to date, an amount which is continuing to accrue.

4. Effective May 31, 2022, the contract under which WEPPA and UHC had been operating was terminated by UHC after WEPPA refused to accept UHC demands that WEPPA accept a 40% cut in the already discounted rates that the parties for years had agreed upon for WEPPA's services. WEPPA's claims prior to that date are the subject of an ongoing arbitration. UHC's conduct since that date has continued unabated and continues to cause WEPPA millions of dollars in damages.

5. The claims for WEPPA's emergency medical services involved in UHC's scheme are Evaluation & Management ("E/M") services, the services encompassing the emergency department physician's work and medical decision-making performed to diagnose and treat a patient presenting to the emergency department. Those services are paid at different amounts, depending upon the needs of the patient and the medical decision-making performed by the physician. The highest intensity E/M services are paid at a level 5 (CPT Code[1] 99285), while the lowest acuity services are paid at a level 1 (CPT Code 99281).

6. UHC's scheme involves denying outright many of WEPPA's reimbursement

---

[1] "CPT Code" refers to the Current Procedural Terminology codes, which provide a uniform nomenclature for coding and billing medical procedures and services.

claims for the highest acuity E/M services, emergency services that WEPPA is required by law to provide, and that UHC and the self-funded health plans it administers are required by law to cover. UHC does not dispute that it owes WEPPA some amount for its performance of these E/M services, but in furtherance of its scheme, refuses to pay WEPPA anything, even the amount owed at whatever E/M coding level UHC claims is appropriate. By withholding all payment on WEPPA's claims for years, UHC is attempting to coerce WEPPA into re-billing those services at a lower amount and waive its right to payment at the amounts justified by the higher level of the E/M services WEPPA's physicians performed.

7.      UHC has furthered its extortionate scheme by adamantly refusing for years to provide WEPPA with any reasons or explanations for why UHC claims the amounts and levels of services billed by WEPPA are not justified. UHC has refused to discuss with WEPPA the E/M coding levels for the claims UHC has denied, and refused to even identify for WEPPA what UHC claims is the appropriate amount owed or E/M coding level. Instead, UHC issues deficient and generic remittance advices that deny WEPPA's reimbursement claims altogether, indicating nothing more than that UHC, for unexplained reasons, claims to disagree with the level of E/M service billed by WEPPA ("Payer deems the information submitted does not support this level of service"). In the years since UHC initiated this scheme, it has consistently and in bad faith refused to provide WEPPA with any reasons for UHC's claims that the amounts and levels billed by WEPPA are not justified, and UHC has refused outright to participate in discussions concerning the basis or reasons for UHC's claims. By doing so, UHC seeks to force WEPPA to either accept no payment at all for the emergency services it is required by law to provide, or to waive its right to the appropriate level of payment and re-bill its reimbursement claims, perhaps repeatedly, at ever-lower amounts and ever-lower E/M levels until UHC agrees to pay them.

8.     UHC's failure to pay WEPPA's claims since June 1, 2022 violates ERISA and the UDTPA. In this action, WEPPA seeks payment of its unpaid claims, treble damages under the UDTPA for UHC's deliberate misconduct, interest on the unpaid amounts owed on those claims, and its attorneys' fees in having to bring suit to enforce its right to payment.

## II.     THE PARTIES

9.     Plaintiff WEPPA is a professional corporation incorporated in North Carolina with a principal place of business at 210 Towne Village Drive, Cary, North Carolina 27513. WEPPA is owned by and employs emergency medicine providers who staff emergency departments in hospitals across North Carolina[2].

10.    Defendant UnitedHealthcare Insurance Company is a company incorporated in Connecticut with a principal place of business at 185 Asylum Street, Hartford, Connecticut 06103. Defendant UnitedHealthcare Insurance Company is a health insurance company which administers and insures benefit plans for covered healthcare services provided to its enrollees.

11.    Defendant UnitedHealthcare of North Carolina, Inc. is a company incorporated in North Carolina with a principal place of business at 3803 North Elm Street, Greensboro, North Carolina 27455.

## III.    JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction over WEPPA's claims arising under ERISA, 29 U.S.C. § 1001, *et. seq*. pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

---

[2] These hospitals include the following: Granville Medical Center (Oxford); UNC Health Wayne (Goldsboro); UNC Health Nash (Rocky Mount); UNC Health Clayton (Clayton); UNC Health Johnston (Smithfield,); WakeMed Cary Hospital (Cary); WakeMed North Hospital (Raleigh); WakeMed Wendell Healthplex (Wendell); WakeMed Garner Healthplex (East Garner); WakeMed Brier Creek Healthplex (Raleigh); WakeMed Apex Healthplex (Apex); WakeMed Children's Emergency Department (Raleigh); and WakeMed Raleigh Campus (Raleigh).

13.     This Court has supplemental subject matter jurisdiction over WEPPA's state law claims pursuant to 28 U.S.C. § 1367.

14.     This Court has personal jurisdiction over all defendants because ERISA authorizes nationwide service of process with respect to claims arising under ERISA, and this Court can exercise pendent personal jurisdiction with respect to other claims asserted against UHC. This Court also has personal jurisdiction over Defendant UnitedHealthcare of North Carolina, Inc. because it is incorporated in and maintains its principal place of business in North Carolina.

15.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to WEPPA's claims occurred in this district.

## IV.     FACTUAL BACKGROUND

16.      Emergency medicine providers see a spectrum of patients in the emergency department whose treatment requires varying degrees of complexity and intensity of service from the physician.

17.     E/M services provided by emergency department providers are billed using CPT codes 99281-99285 to describe the amounts owed based on the level of the "E/M" service provided, with each code corresponding to a level of service 1-5. For example, CPT code 99285 represents a "Level 5" emergency visit, reflecting those cases requiring a high complexity of service from the physician. The appropriate E/M level of service to be assigned for a given visit is described in CPT and Centers for Medicare & Medicaid Services ("CMS") guidance and is determined based on the scoring of the patient's medical record in the following three separate categories: (1) history; (2) physical examination; and (3) medical decision making.

18.     From April 15, 2014 to May 31, 2022, WEPPA was a party to a Medical Group Participation Agreement with UHC (the "Agreement"), which memorialized UHC's agreement to certain discounted rates for WEPPA's emergency medicine services, and WEPPA's agreement to

accept those discounted rates as payment in full for its services to UHC customers.

19.     At some point on or about 2019, while the Agreement was still in effect, UHC began requesting medical records from WEPPA before UHC would adjudicate a significant percentage of WEPPA's level 5 and level 4 E/M claims.  Despite WEPPA dutifully providing UHC with the medical records supporting the E/M levels as billed by WEPPA, itself an arduous and burdensome task given the volume of claims on which UHC regularly requested medical records, UHC then denied outright WEPPA's claims for payment on a large number of these claims, using a generic denial code to state only that UHC did not "deem" that the documentation submitted supported the E/M level billed by WEPPA.  UHC refused to say why or what E/M levels UHC claimed were appropriate.  UHC refused to pay the claims at the E/M level that UHC deemed were appropriate.

20.     WEPPA also submitted appeals for its claims, but UHC denied those appeals without providing any additional information to support or explain its refusal to pay, or partially pay, the claims. UHC, in responding to WEPPA's appeals, still refused to identify the reasons why it claimed that the E/M levels submitted by WEPPA were not justified or identify what UHC deemed to be the appropriate amounts or E/M levels.

21.     In the years since, UHC has refused to engage with WEPPA in good faith to discuss each side's view of the appropriate coding of those claims.  To this day, UHC has still not paid anything for the more than 5900 claims for emergency medicine services provided by WEPPA that UHC denied.

22.     WEPPA and UHC's contractual relationship subsequently ended on May 31, 2022, when UHC unilaterally terminated the Agreement after WEPPA refused to accept UHC's demands for a 40% reduction from the already discounted rates on which the parties had previously agreed.

After this termination, WEPPA initiated an arbitration against UHC, as required by the Agreement, for all unpaid claims through May 31, 2022.

23.     UHC continued its pattern of conduct after the Agreement terminated.  UHC continued to demand that WEPPA produce voluminous medical records, and UHC then continued to deny WEPPA's claims outright.  UHC refused to pay the claims at the E/M levels billed by WEPPA, or provide any reasons why UHC claimed the services provided by WEPPA did not justify that E/M level.  UHC refused to identify the E/M level UHC claimed was appropriate.  UHC continued to not only refuse to pay the claims at the E/M levels billed by WEPPA, but also refused to pay the undisputed portion of the claims at the E/M levels that UHC claimed were appropriate.  UHC has continued to refuse to engage with WEPPA in good faith to discuss each side's view of the appropriate coding of those claims.

24.     To this day, UHC has still not paid anything at all for the many WEPPA claims for E/M services provided since June 1, 2022.  The unpaid claims represent well in excess of $2 million to date, an amount which continues to accrue.

25.     The E/M codes WEPPA assigned to the emergency services provided to UHC enrollees are based on CPT and CMS guidance and fully supported by the medical records documenting the history, physical exam and medical decision-making performed by the WEPPA physicians.

26.     Overwhelmingly, WEPPA's unpaid claims consist of the claims to which WEPPA appropriately assigned CPT codes 99284 and 99285, representing WEPPA's treatment of the highest acuity patients and/or the more complex encounters with patients seeking emergency care.  These are also the most expensive claims for insurers like UHC to pay.

27.     UHC does not dispute that WEPPA's emergency services were medically necessary

and covered services under the patients' health plans, but it has nevertheless purported to deny outright WEPPA's claims for payment. UHC has failed to provide to WEPPA any health plan or policy terms that would permit UHC to deny any payment for covered claims for medically necessary, emergency medicine services.

28.     UHC has refused to pay WEPPA for the undisputed or uncontested portion of its E/M claims, i.e., the amount owed by UHC for whatever lower amount and E/M level that UHC would claim *is* appropriate.  Even though UHC does not contest that payment at some level is unquestionably due to WEPPA, UHC has continued to outright deny WEPPA any payment at all. By so doing, UHC is in violation of the North Carolina Prompt Pay Statute, which unambiguously provides that "[i]f a claim is denied or contested in part, the insurer shall pay the undisputed portion of the claim within 30 calendar days of receipt of the claim."  N.C.G.S. § 58-3-225(c).

29.     UHC has also refused to provide WEPPA with any specific, good faith reasons for its denials or its claims that the services performed by the WEPPA providers do not justify the amount of payment and/or level of service assigned by WEPPA in its reimbursement claims.  Once again, UHC's conduct is in violation of the North Carolina Prompt Pay Statute, which provides that "[i]f the claim is denied, the notice shall include all of the specific good faith reason or reasons for the denial . . ."  N.C.G.S. § 58-3-225(c).

30.     Nevertheless, for each of the individual claims for which UHC has denied payment altogether, UHC has painstakingly refused to provide any specific, good faith basis or reason for UHC's unsupported claims that the amounts and E/M levels assigned by WEPPA for the services it performed were not justified based on the history, physical examination or medical decision-making performed by the WEPPA physicians.

31.     UHC has instead provided only a generic denial code on its remittance advices

indicating nothing more than that UHC claims, for unexplained and entirely non-specific reasons, to have some disagreement with the amount and the levels of E/M service in the reimbursement claims submitted by WEPPA.

32.     UHC has, to this day, continued to refuse to engage in any discussions with WEPPA concerning the appropriate level of E/M services for these claims and has continued to refuse to identify to WEPPA even what level of E/M service and what corresponding amount of payment UHC claims *is* appropriate for each claim.

33.     Upon information and belief, UHC's claims of disagreement with the E/M levels assigned by WEPPA are not even based on the criteria by which the appropriate E/M level is determined, i.e., the history, physical exam and medical decision-making performed by the WEPPA physicians.

34.     Instead, upon information and belief, UHC's claims of disagreement with the E/M levels assigned by WEPPA are based on automated software used by UHC that it promotes as having been designed to avoid the expense of actually reviewing medical records and instead improperly bases its determinations on diagnosis codes and other inappropriate criteria.

35.     UHC used and continues to generally use an improper methodology for handling all emergency medical treatment claims, including WEPPA's claims. In a UnitedHealthcare Network Bulletin from January 2020, UHC stated the following: "In an effort to reduce the administrative burden of requesting and submitting medical records for review, UnitedHealthcare will begin using the Optum Evaluation and Management Professional (E/M Pro) tool . . . the E/M Pro tool calculates the appropriate E/M level based on submitted diagnosis codes."

36.     The use of diagnosis codes by health insurers to evaluate the appropriateness of the level of E/M service has been widely debunked, including by CMS, as wholly improper and

unjustifiable. As health insurers know, it systematically ignores the work performed by the physician to diagnose and treat the patient based on the patient's presentation to the emergency department, including the work necessary to rule out potentially serious conditions, and focuses instead exclusively on the end result.

37.    The same UHC bulletin makes clear that UHC could have paid WEPPA the undisputed amounts owed for the E/M services it provided, based on the E/M levels UHC claimed were appropriate, but decided instead to withhold all payment to WEPPA. *See* UnitedHealthcare Network Bulletin Jan. 2021 ("Providers . . . may experience *adjustments to reflect an appropriate level E/M code* or may receive a denial . . .") (emphasis supplied). Upon information and belief, UHC routinely applies the same improper methodology in handling emergency medicine claims for all of the health plans it administers.

38.    UHC is engaged in an extortionate and unfair and deceptive scheme to try to coerce, pressure, and intimidate WEPPA and other emergency medicine providers into waiving itheir right to payment at the amounts corresponding to the E/M level of the emergency services the providers actually performed in order to receive any payment at all for medically necessary, covered emergency medicine services. UHC also seeks to coerce, pressure and intimidate WEPPA and other emergency medicine providers going forward into eliminating billing the appropriate E/M levels for much of the higher acuity services they provide to UHC members to avoid UHC's withholding altogether any payment on the claims.

39.    Notwithstanding the fact that the amounts and E/M levels billed by WEPPA and other emergency medicine providers on their unpaid claims were appropriately assigned, UHC is deliberately targeting WEPPA and other emergency medicine providers' reimbursement claims at higher E/M levels (99284 and 99285) to be outright denied to save more money by withholding

payment without an appropriate basis to do so.

40.    In furtherance of its scheme implemented, upon information and belief, across all of the plans it administers, UHC has withheld all payment to WEPPA for years for many of the highest value E/M services it provides to UHC members, including improperly denying outright those claims for medically necessary, covered emergency services and refusing to pay WEPPA the uncontested portions of the amounts owed by UHC on those claims.

41.    In furtherance of its scheme, UHC has improperly refused to provide WEPPA and, upon information and belief, other emergency medicine providers with any specific good faith reasons for UHC's denials and its claimed disagreements with the amounts and E/M levels billed by WEPPA and other providers.  UHC refuses to provide WEPPA and, upon information and belief, other emergency medicine providers with an appropriate explanation of benefits that gives specific good faith reasons and explanations for its denials.  UHC refused to even discuss with WEPPA, and upon information and belief, other emergency medicine providers, any concerns UHC claims to have with the E/M amounts and levels billed by WEPPA and other providers, even refusing to identify for WEPPA and other providers the amount and E/M level UHC claims is appropriate.  By so doing, UHC has systematically engaged in practices seeking to force WEPPA and other emergency medicine providers into a choice of either accepting no payment at all for the medically necessary, covered emergency services they performed for UHC members or to waive their right to payment at the appropriate amounts and E/M levels and instead serially re-bill their claims at ever lower amounts and E/M levels until they reach a level and amount UHC wants agree to pay.

42.    As a result of UHC's improper denials of WEPPA's medically necessary, covered services, WEPPA has suffered damages in unpaid claims since June 1, 2022 that amount to well

in excess of $2 million, an amount which is continuing to accrue.

## COUNT I: VIOLATIONS OF ERISA
### 29 U.S.C. § 1001, *ET. SEQ.*

43.     WEPPA incorporates by reference the foregoing paragraphs as if set forth fully herein. WEPPA believes, and therefore alleges, that some portion of the unpaid claims at issue are under self-funded health benefit plans which constitute employee benefit plans covered by and subject to ERISA.  ***This count pertains to those claims only***.

44.     With respect to such ERISA-covered plans, UHC provides claims administrative services which include making determinations concerning payment of claims submitted by medical providers for services rendered to plan participants and beneficiaries.  Based on its performance of such functions and its provision of claims administrative services, UHC is a fiduciary of such plans defined in ERISA, 29 U.S.C. §1002(21)(A).

45.     Count I is brought under Sections 502(a)(1) and 503 of ERISA, 29 U.S.C. §1132(a)(1) and 29 U.S.C. §1133.

46.     By virtue of the assignment of benefits and rights provided by patients at the time emergency services were rendered to them, WEPPA has standing under Section 502(a) of ERISA to bring this action to recover benefits due under the terms of the applicable health benefit plans, to enforce rights under the terms of those plans, to clarify rights to future benefits under the terms of those plans, and to otherwise enjoin and remedy UHC's substantive and procedural violations of ERISA.

47.     After providing emergency services to patients and members covered by the applicable health benefit plans, WEPPA submitted claims to UHC seeking payment and reimbursement for such services. UHC has refused to make any payments to WEPPA for such

services and has not even made partial payments for the claims at issue, all of which constitute medically necessary emergency services covered by the applicable health benefit plans.

48.    UHC has refused to make any payments to WEPPA with respect to the unpaid claims, despite the fact that the unpaid claims are for services covered by the applicable health benefit plans and that have been rendered to UHC members, and despite the fact that WEPPA provided UHC with all necessary information and documentation supporting its request for payment of the unpaid claims.

49.    The claims process administered by UHC with respect to the unpaid claims violates ERISA and Department of Labor ("DOL") regulations in several respects. First, 29 C.F.R. §2560.503-1(b)(5) requires that claim determinations be made "in accordance with governing plan documents." Contrary to this requirement, the claim denials issued by UHC with respect to the unpaid claims were made by UHC without regard to the applicable plan terms.

50.    Moreover, the claim denials issued by UHC with respect to the unpaid claims violate 29 C.F.R. §2560.503-1(g) which governs the manner and content of benefit determinations. This regulation requires that "[t]he notification shall set forth, in a manner calculated to be understood by the claimant" (a) the specific reason for the adverse determination; (b) reference to the specific plan provisions on which the determination is based; (c) a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and (d) a description of the plan's review procedures and the time limits applicable to such procedures. UHC's claim denials failed to comply with these requirements. Among other issues, the determinations failed to provide a specific reason for each adverse determination and did not make reference to the specific plan provisions on which the determinations were based, instead employing cryptic and deliberately vague, conclusory

statements that provided no meaningful information concerning UHC's specific reasons.

51.     Likewise, the appeal process followed by UHC with respect to the unpaid claims violates ERISA and the DOL regulations. Among other things, 29 C.F.R. § 2560.503-1(h) requires employee benefit plans to establish and maintain a procedure for appealing adverse benefit determinations, including a requirement that a claimant be provided, upon request and free of charge, reasonable access to and copies of all documents, records, and other information relevant to the claimant's claim for benefits. Contrary to this requirement, despite repeated requests from WEPPA, UHC refused or failed to provide WEPPA with copies of documents relevant to the unpaid claims, including copies of applicable plan documents.

52.     It would be futile for WEPPA to have continued to try to pursue such claim and appeal procedures, given UHC's flagrant disregard of the substantive and procedural requirements under ERISA and the accompanying DOL regulations.

53.     UHC breached the terms of the applicable plans of plan members in whose shoes WEPPA stands, by refusing to make any payment of benefits to WEPPA for the unpaid claims, and by making improper, arbitrary, and capricious claim determinations with respect to the unpaid claims.

54.     Under ERISA, UHC must comply with the terms and conditions of the applicable health plans in making determinations and processing claims on behalf of the patients and members covered by such plans. UHC breached these obligations by refusing to make payment to WEPPA for the unpaid claims.

55.     UHC's disregard of the substantive and procedural requirements under ERISA and the accompanying DOL regulations makes it impossible for WEPPA to identify and to plead specific plan provisions which have been breached by UHC.

56.     UHC acted as fiduciaries to the plan beneficiaries, including WEPPA and/or the patients and plan members who made assignments of benefits to WEPPA, because UHC exercised sole discretion, authority and control in determining whether plan benefits would be paid and/or the amounts of benefits that would be paid to those plan beneficiaries. In violation of ERISA, UHC failed to make payments of benefits to WEPPA, as assignees of patients under the applicable employee benefit plans, as required under the terms of the plans.

57.     Further, in violation of their fiduciary duties under the plans and ERISA, UHC adopted and employed various methods specifically designed to systematically and wrongfully deny, reduce, and delay payments for emergency services which are covered under the applicable plans. The practices include UHC's conduct in applying processes, strategies, standards and other factors designed to deny or reduce benefits for emergency services that are inconsistent with or in conflict with generally accepted medical standards as well as with the terms of the applicable plans.

58.     Pursuant to Section 502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), WEPPA is entitled to recover the full amount owed on the unpaid claims from UHC. WEPPA also demands that UHC pay its reasonable attorneys' fees and appropriate interest back to the date payment on the unpaid claims was originally due.

**COUNT II**
**EQUITABLE RELIEF PURSUANT TO 29 U.S.C. § 1132(a)(3)**

59.     WEPPA incorporates the foregoing allegations as if set forth herein.

60.     29 U.S.C. § 1132(a)(3) states, in relevant part, that a participant or beneficiary can bring a civil action to: "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]"

61.     By having and/or assuming discretionary authority and responsibilities for

administering health care benefits under employee benefit plans, UHC is an ERISA fiduciary.

62.    As a plan fiduciary, UHC is obligated to discharge its duties "solely in the interest of the participants and beneficiaries" and exclusively for the purpose of providing and administering benefits to plan participants and beneficiaries. 29 U.S.C. §1104(a)(1). As an ERISA fiduciary, UHC owes a variety of fiduciary duties, including the duty to make decisions in accordance with insurance plan terms and ERISA.

63.    By systematically administering and denying benefits for emergency health care services through claims handling and adjudication methods prohibited in plan documents, and by doing so in furtherance of UHC's interests, rather than the sole interests of plan participants and beneficiaries, UHC has breached their fiduciary duties of loyalty and care.

64.    As described above, UHC has further engaged in deceptive acts and practices, and provided deceptive information.

65.    UHC's systematic actions are not an isolated issue but an ongoing violation of ERISA with respect to UHC's methodology for handling emergency medicine E/M claims both of WEPPA and other emergency medicine providers.

66.    WEPPA now seeks appropriate equitable relief pursuant to 29 U.S.C. §1132(a)(3), prohibiting UHC from continuing to systematically engage in the same pattern of misconduct set forth above and from continuing to systematically apply its improper claims handling methodology, policies and procedures which violate its fiduciary duties under ERISA, as detailed herein.

## COUNT III
## UNFAIR METHODS OF COMPETITION AND UNFAIR OR DECEPTIVE ACTS
### N.C. GEN. STAT. §§ 75-1.1, 75-16, AND 58-63-15(11)

67.    WEPPA re-alleges and incorporates by reference the foregoing factual allegations

as if set forth herein.

68. The claims brought in this Count are ***not seeking benefits under an ERISA benefit plan or any health insurance plan***, nor are they alleging wrongdoing on the part of the health plans insured or administered by UHC, but rather are independently seeking damages from UHC resulting solely and directly from UHC's own conduct in engaging in the extortionate scheme set forth above and in engaging in the conduct set forth below.

69. Pursuant to N.C. Gen. Stat. § 75-1.1, UHC is prohibited from engaging in unfair or deceptive acts or practices, or unfair methods of competition, in or affecting commerce.

70. UHC has nevertheless engaged, and continues to engage, in unfair and deceptive acts or practices and unfair methods of competition in or affecting commerce, including in all of the following ways: engaging in an extortionate scheme, as set forth above, to deprive WEPPA of payment at the amounts due based on the E/M level of the emergency services performed by WEPPA's physicians; wholly refusing to pay WEPPA's claims seeking reimbursement for medically necessary emergency care that WEPPA has provided to UHC customers; by processing those claims in a fraudulent and deceitful manner that ensured their denials were both unavoidable and inescapable; denying claims appropriately billed with higher level CPT codes, and refusing to pay anything at all or denying those claims, to pressure WEPPA to limit the use of such codes, to create administrative and financial burdens, and to coerce, pressure, or intimidate WEPPA into accepting less than the appropriate payment for higher level (and higher value) emergency department evaluation and management services; seeking to profit from unreimbursed care; systematically draining and diminishing the emergency resources of WEPPA, the hospitals staffed by its providers, and the communities that depend on those hospitals; and engaging in other unfair methods of competition and unfair or deceptive acts, as further described herein.

71. UHC's conduct described herein violates N.C. Gen. Stat. § 75-1.1 in numerous, independent ways: (a) as a per se violation; (b) as unfair conduct; (c) as deceptive conduct; and (d) as unfair methods of competition.

72. UHC is prohibited from engaging in unfair claims settlement practices against WEPPA pursuant to N.C. Gen. Stat. § 58-63-15(11). Violations of N.C. Gen. Stat. § 58-63- 15(11) constitute *per se* violations of N.C. Gen. Stat. § 75-1.1.

73. UHC's unfair claims settlement practices under N.C. Gen. Stat. § 58-63- 15(11) proximately caused actual injury to WEPPA.

74. UHC has further violated N.C. Gen. Stat. § 75-1.1 by engaging in unfair and deceptive acts and practices and unfair methods of competition in the business of insurance prohibited by N.C. Gen. Stat. § 58-63-15(11) and other laws including, without limitation, committing and performing with such frequency as to indicate a general business practice the following: (1) misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue; (2) failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies; (3) failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies; (4) refusing to pay claims without conducting a reasonable investigation based upon all available information; (5) not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear; (6) attempting to settle claims for less than the amount to which a reasonable man would have believed he was entitled; and (7) failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

75. WEPPA's business has been injured by the unfair and deceptive acts and practices

and unfair methods of competition described above, which UHC has willfully engaged in and refused to resolve.

76. WEPPA is, therefore, entitled to recover treble damages pursuant to N.C. Gen. Stat. § 75-16 and its attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.1.

## COUNT IV
## UNJUST ENRICHMENT

77. WEPPA incorporates the foregoing allegations as if set forth herein.

78. WEPPA believes, and therefore alleges, that some portion of the unpaid claims at issue are for patients with health plans insured by UHC. *This count pertains to those claims only*.

79. *The claims brought in this Count are not seeking benefits under any self-funded ERISA benefit plan*.

80. WEPPA conferred a direct, measurable benefit on UHC by, among other things, providing medically necessary services to UHC's enrollees in the form of emergency medicine services. WEPPA did not confer this benefit officiously or gratuitously.

81. UHC received bills from WEPPA arising from those services, and therefore had knowledge that WEPPA conferred the benefits.

82. UHC has an obligation to pay for medically necessary emergency medicine services, such as that provided by WEPPA, to patients that are UHC enrollees in health plans insured by UHC.

83. UHC voluntarily accepted and retained the benefits of the services provided by WEPPA to those UHC enrollees, while also being paid monthly premiums to ensure those enrollees would have coverage for their covered medical care.

84. Yet, at the same time, UHC failed and refused to pay WEPPA a fair and reasonable value, or anything at all, for the medically necessary, covered emergency medicine services.

85.     In so doing, UHC obtained the benefit of the medically necessary, covered emergency services received by those patients without having to pay WEPPA, or another emergency physician group, for providing them.

86.     In light of the circumstances, it would be inequitable for UHC to receive the benefit of WEPPA's services to those patients and fail to reimburse WEPPA for the full value of the emergency department services provided to UHC's enrollees.

87.     Accordingly, UHC has been unjustly enriched by accepting and retaining the benefits of the emergency department services performed by WEPPA, but failing to reimburse WEPPA for the fair and reasonable value of the services provided.

88.     WEPPA has suffered damages as a result of UHC's unjust enrichment.

## V.     <u>JURY DEMAND</u>

89.     WEPPA demands a jury on all issues so triable.

## VI.     <u>REQUEST FOR RELIEF</u>

WHEREFORE, WEPPA respectfully requests judgment in its favor awarding compensatory damages, punitive damages, treble damages, equitable relief, attorneys' fees and costs, pre-judgment and post-judgment interest, and such other relief as the Court shall determine to be just and proper.

*[Signature Page Follows]*

Dated: June 25, 2025

By: /s/ *Robert Zaffrann*
Robert Zaffrann
DUANE MORRIS LLP
100 High Street, Suite 2400
Boston, MA 02110-1724
(857) 488-4282
RZaffrann@duanemorris.com
MA State Bar No. 638183
Attorney for Plaintiff

/s/ *Craig M. Warner*
Craig M. Warner
DUANE MORRIS LLP
100 Crescent Court, Suite 1200
Dallas, TX 75201
CMWarner@duanemorris.com
(214) 257-7277
Fax (214) 853-4220
State Bar No. 32983
Local Civil Rule 83.1(d) Attorney for
Plaintiff

Arti Fotedar
DUANE MORRIS LLP
22 Vanderbilt
335 Madison Avenue, 23rd Flr.
New York, NY 10017-4669
(212) 471-1833
AFotedar@duanemorris.com
NY State Bar No. 5446968
Attorney for Plaintiff